UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

LORNA BOYD,

                        Plaintiff,

        v.

WELLS FARGO BANK, N.A. and FRENKEL,
LAMBERT, WEISS, WEISMAN & GORDON
LLP,

                        Defendants.

**MEMORANDUM & ORDER**
19-CV-4323 (MKB)

---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

       Plaintiff Lorna Boyd, proceeding *pro se*, commenced the above-captioned action on July 26, 2019, against Wells Fargo Bank, N.A. ("Wells Fargo"), and Frenkel, Lambert, Weiss, Weisman & Gordon LLP ("Frenkel Lambert"), alleging that Defendants wrongfully foreclosed upon her home in state court.  (Compl, Docket Entry No. 1; Am. Compl., Docket Entry No. 17.) Plaintiff contends that Defendants violated her due process rights and defrauded her during the foreclosure proceeding in the Supreme Court of the State of New York concerning the property located at 221-43 113th Drive in Cambria Heights, New York (the "Property").  (Am. Compl. ¶ 42.)

       Defendants move separately to dismiss the Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[1]  For the reasons set forth below, the Court dismisses the Amended Complaint.

---

[1]  (Mot. to Dismiss filed by Wells Fargo ("Wells Fargo Mot."), Docket Entry No. 25; Mem. in Supp. of Wells Fargo Mot. ("Wells Fargo Mem."), Docket Entry No. 33; Mot. to Dismiss filed by Frenkel Lambert ("Frenkel Lambert Mot."), Docket Entry No. 29; Mem. in

# I.    Background

The Court assumes the truth of the factual allegations in the Complaint for purposes of this Memorandum and Order.[2]

## a.    History of the note and mortgage

Plaintiff[3] alleges that on April 28, 2000, she obtained a mortgage loan from Ameritrust National Mortgages Bankers, Inc. ("Ameritrust"), and executed a mortgage on the Property. (Am. Compl. ¶¶ 7–8.)  Ameritrust assigned the mortgage to Homeside Lending, Inc., which was then acquired by Washington Mutual Bank.  (*Id.* ¶¶ 9–10.)  In September of 2008, the Federal Deposit Insurance Corporation ("FDIC") took possession of Washington Mutual Bank's assets. (*Id.* ¶¶ 11–12, 107.)  J.P. Morgan Chase Bank ("Chase") then purchased Washington Mutual Bank's assets and liabilities from the FDIC.  (*Id.* ¶¶ 13–14, 107–111.)  On March 9, 2009, Plaintiff entered into a modified loan agreement with Wells Fargo Bank, N.A.  (Frenkel Lambert

---

Supp. of Frenkel Lambert Mot. ("Frenkel Lambert Mem."), Docket Entry No. 31.)  Plaintiff never filed an opposition to the motion.

[2]  In addition, the Court takes judicial notice of the documents filed in Plaintiff's foreclosure proceeding in state court.  *See Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." (quoting *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998))); *Nath v. JP Morgan Chase Bank*, No. 15-CV-3937, 2016 WL 5791193, at *1 n.1 (S.D.N.Y. Sept. 30, 2016) (taking judicial notice of the note, mortgage, and assignment of mortgage as well as documents filed in state-court foreclosure proceedings).

[3]  Plaintiff refers to "Owners acting . . . in the capacity of a Pro Se Defendant and Counter-Plaintiff."  (Am. Compl. 2.)  Plaintiff does not refer to any other owners and is the only person named on the mortgage.  (Note, Mortgage, Modified Loan, and Assignment, annexed to Aff. in Supp. of Frenkel Lambert Mot. ("Frenkel Lambert Aff.") as Ex. A ("Frenkel Lambert Ex. A"), at 6, Docket Entry No. 30-1).  Therefore, the Court treats references to "Owners" in the Amended Complaint as references to Plaintiff.

Ex. A, at 22.)  On December 29, 2011, the FDIC, acting as receiver for Washington Mutual Bank,[4] assigned the note and mortgage on the Property to Wells Fargo.[5]  (*Id.* at 36.)

### b.   The foreclosure proceedings in state court

On March 12, 2013, Wells Fargo commenced a foreclosure action in New York State Supreme Court, Queens County (the "State Court"), through its counsel Frenkel Lambert, contending that Plaintiff had not complied with the terms and conditions of the modified loan agreement (the "Foreclosure Action").  (Summons, State Ct. Compl., Notice of Pendency, and Aff. of Service, annexed to Frenkel Lambert Aff. as Ex. B, Docket Entry No. 30-2.)  On October 6, 2016, the State Court granted Wells Fargo a default judgment against Plaintiff and appointed a referee.  (Stipulation of Adjournment, Mem., and Order Appointing Referee, annexed to Frenkel Lambert Aff. as Ex. D, Docket Entry No. 30-4.)  On December 15, 2016, Wells Fargo, through Frenkel Lambert, served on Plaintiff a judgment of foreclosure and sale together with a verified report of amount due.  (Mot. for J. of Foreclosure and Sale, annexed to Frenkel Lambert Aff. as Ex. E, Docket Entry No. 30-5.)  On December 22, 2016, Plaintiff filed a verified answer, which was rejected on the ground that it was untimely.  (Verified Answer and Notice of Rejection,

---

[4]  In an affidavit, a legal assistant familiar with the facts stated that Washington Mutual Bank assigned the mortgage to Wells Fargo on July 29, 2010 and that the assignment was recorded on August 25, 2010.  (Frenkel Lambert Ex. A, at 19 (affidavit of Jennifer Canfield).)  This affidavit separately describes the 2009 loan modification, which modified Plaintiff's mortgage to "capitalize [the] interest . . . to form a new single lien," (*id.*).  It is annotated by hand with the words "[n]o mortgage found."  (*Id.*)

[5]  Plaintiff sets forth the history of how Chase acquired Washington Mutual Bank and argues that Chase was the true holder of the mortgage and note.  (*Id.* ¶¶ 127–180.)  Plaintiff alleges that Wells Fargo had a limited power of attorney and chose not to attach it to the summons and complaint because it was "not valid" for the loan at issue, (*id.* ¶¶ 183–186), and further contends that it was not notarized until January 14, 2009, and the notary did not properly affix her seal even then.  (*Id.* ¶¶ 187–192.)  The Court addresses Plaintiff's arguments about the propriety of the foreclosure proceedings below.

3

annexed to Frenkel Lambert Aff. as Ex. F, Docket Entry No. 30-6.)  Plaintiff moved to dismiss the Foreclosure Action on the ground that she had not been properly served with the summons and complaint.  (Mot. to Dismiss and Aff. in Opp'n, annexed to Frenkel Lambert Aff. as Ex. G, Docket Entry No. 30-7.)  She also argued that Wells Fargo was not the true owner of the Note. (Pl.'s Opp'n to Mot for J. of Foreclosure and Sale ¶ 16, annexed to Frenkel Lambert Aff. as Ex. H, Docket Entry No. 30-8.)  On April 17, 2017, the State Court granted Wells Fargo's motion for a judgment of foreclosure and sale, holding that "[t]he allegations set forth in [Plaintiff's] motion papers are not issues to be considered on a motion for a judgment of foreclosure and sale and are meritless" and that she had set forth no excuse for her default.  (Mem. granting Mot. for J. of Foreclosure and Sale 2, annexed to Frenkel Lambert Aff. as Ex. I, Docket Entry No. 30-9.)  The State Court also denied Plaintiff's motion to dismiss, finding that it was untimely and that she had submitted to the court's jurisdiction by "appear[ing] in four settlement conferences . . . without making a limited appearance."  (Order dated May 16, 2017, at 2, annexed to Frenkel Lambert Aff. as Ex. K, Docket Entry No. 30-11.)[6]  On October 17, 2017, the State Court entered the judgment of foreclosure and sale.  (J. of Foreclosure and Sale, annexed to Frenkel Lambert Aff. as Ex. L, Docket Entry No. 30-12.)

On or about May 24, 2017, Plaintiff filed an order to show cause seeking to vacate the default judgment, which the State Court denied on the ground that the "application was previously denied" on February 26, 2017 and Plaintiff's "arguments were also rejected on [May 16, 2017]."  (Order to Show Cause, annexed to Frenkel Lambert Aff. as Ex. M, Docket Entry No. 30-13.)  On or about January 24, 2018, after a public auction of the Property was scheduled

---

[6] Where the attachments to the Frenkel Lambert Affidavit and Wells Fargo Affidavit are not consecutively paginated, the Court refers to the ECF pagination.

for January 26, 2018, Plaintiff filed a second order to show cause.  (Notice of Sale and Order to Show Cause, annexed to Frenkel Lambert Aff. as Ex. N, Docket Entry No. 30-14.)  The State Court denied the order to show cause, finding that it had previously denied Plaintiff's attempts to vacate the decision.  (*Id.* at 5.)

On January 25, 2018, one day before the scheduled sale, Plaintiff filed a bankruptcy petition in the United States Bankruptcy Court for the Eastern District of New York. (Bankruptcy Ct. Order dated Mar. 28, 2018, annexed to Frenkel Lambert Aff. as Ex. O, Docket Entry No. 30-15.)  On March 28, 2018, the Bankruptcy Court dismissed the petition for failure to file the required documents.  (*Id.*)  Wells Fargo rescheduled the sale of the property for July 20, 2018.  (2018 Notice of Sale and Order to Show Cause, at 2, annexed to Frenkel Lambert Aff. as Ex. P, Docket Entry No. 30-16.)  On or about July 13, 2018, Plaintiff filed a third order to show cause in the State Court.  (*Id.* at 5.)  After a hearing, the state court declined to stay the auction. (*Id.*)  On July 19, 2018, one day before the sale, Plaintiff filed a second Chapter 13 bankruptcy petition.  (Bankruptcy Ct. Order dated Oct. 5, 2018, annexed to Frenkel Lambert Aff. as Ex. Q, Docket Entry No. 30-17.)  On October 5, 2018, the Bankruptcy Court dismissed the case with prejudice pursuant to the trustee's motion and barred Plaintiff from filing further Chapter 13 suits for a period of one year.  (*Id.* at 2.)

Wells Fargo rescheduled the sale of the Property for February 8, 2019 and Plaintiff filed a Chapter 7 bankruptcy petition on February 7, 2019, but the bankruptcy court did not stay the sale of the Property and the sale proceeded on February 8, 2019.  (Order Confirming Absence of Automatic Stay, annexed to Frenkel Lambert Aff. as Ex. R, Docket Entry No. 30-18; Notice of Sale, annexed to Decl. of Natsayi Mawere in Supp. of Wells Fargo Mot. ("Wells Fargo Aff.") as Ex. M, Docket Entry No. 26-13.)  On April 19, 2019, the Bankruptcy Court dismissed the

5

petition.  (Bankruptcy Ct. Order dated Apr. 19, 2019, annexed to Frenkel Lambert Aff. as Ex. S,

Docket Entry No. 30-19.)

### c.   The Amended Complaint

Plaintiff commenced this action on July 26, 2019, (Compl.), and filed an Amended

Complaint on October 2, 2019, (Am. Compl.).  In the Amended Complaint, Plaintiff alleges that

she was not properly served and Defendants committed fraud in the Foreclosure Action.  (*See*

*generally* Am. Compl.)  Plaintiff seeks sanctions against Defendants for their conduct in the

Foreclosure Action.  (*Id.* ¶¶ 480–505.)

### i.   Allegations of improper service

Plaintiff contends that the process server went to the wrong address and, according to his

own affidavit, served Vera James at 221-43 113th Avenue, Queens Village, New York (the

"James House"), rather than Plaintiff at 221-43 113th Drive, Cambria Heights, New York,

therefore Plaintiff was never served in the Foreclosure Action.  (Am. Compl. ¶¶ 16–26, 72, 74,

357–362.)  In addition, Plaintiff contends that Defendants commenced their action through a law

firm "well known for foreclosure abuses," which has since been "banned from the practice of

commencing foreclosures," (*id.* ¶¶ 40, 372), and the process server "is known to have abused his

authority" and to have violated the law, (*id.* ¶ 81, 363–366).  Plaintiff contends that it is

"obvious" that this improper service in the Foreclosure Action is a continuation of past practices.

(*Id.* ¶¶ 40–41.)

In a signed affidavit, Plaintiff states that she was not served at work or at home, that at

the time, she lived by herself with two young children, and that the process server's affidavit

stated that he had served Vera James at the address of the Property even though he "never would

6

have found" Ms. James there.[7]  (*Id.* at 13–15.)  In her affidavit, Plaintiff refers to the declaration

of Vera James and her husband Charles James stating that they have lived at the James House,

which is two blocks from the Property, since 1962.[8]  (*Id.* ¶ 74.)

Plaintiff contends that because Defendants did not properly serve her, the State Court

lacked personal jurisdiction over her and the State Court judge's refusal to vacate the default

when she appeared violated her due process rights.  (*Id.* at 5; *id.* ¶ 26.)  In addition, the judgment

of foreclosure and sale is void, res judicata does not apply to her challenge to the Foreclosure

Action, (*id.* ¶¶ 16–26, 44, 46, 55–61, 66–69), and the process server committed fraud on the

State Court, (*id.* ¶¶ 212–225).  Plaintiff seeks a hearing on whether she was properly served.[9]

(*Id.* ¶ 85.)

### ii.    Fraud allegations

Plaintiff contends that the attorney's signature in the Foreclosure Action verifying that

Wells Fargo was the owner of the note and mortgage was fraudulent for several reasons.  (*Id.*

¶¶ 252–255, 260.)  First, Plaintiff alleges that Chase had already acquired all of Washington

Mutual Bank's assets when the FDIC receiver allegedly transferred the note to Wells Fargo, and

---

[7]  Plaintiff submits this affidavit to rebut the presumption of proper service created by the process server's affidavit.  (Am. Compl. ¶¶ 62–64.)

[8]  Although Plaintiff states that these declarations are attached, they were not filed with the Court.

[9]  On July 26, 2019, Plaintiff moved for a temporary restraining order ("TRO") and a preliminary injunction ("PI") (Proposed Order to Show Cause for PI and TRO, Docket Entry No. 2), which the Court denied the same day, (Order dated July 26, 2019, Docket Entry No. 7). Although she did not renew her motion for injunctive relief, in the Amended Complaint, Plaintiff appears to seek a TRO or PI against the auction of the Property.  (Am. Compl. ¶¶ 48–53, *see also id.* at 26–27.)  Because the Property has been sold, (*see* Referee's Report of Foreclosure and Sale, annexed to Wells Fargo Aff. as Ex. N, Docket Entry No. 26-14), construing the allegations as a motion, the Court denies it as moot.

therefore, the FDIC receiver lacked the authority to make that transfer.[10]  (*Id.* ¶¶ 107–180.)  In

support, Plaintiff contends that the FDIC receiver no longer had the loan and could not have

assigned the note and the mortgage, or, in the alternative, that only the mortgage could have been

transferred.  (*Id.* ¶¶ 226–246.)  Second, Plaintiff alleges that because title to the Property was not

recorded in Wells Fargo's name before the foreclosure action was commenced in state court,

Wells Fargo was not the proper party in interest.[11]  (*Id.* ¶¶ 445–452.)  In support, Plaintiff alleges

that Wells Fargo had a limited power of attorney in the Foreclosure Action and did not attach it

to the summons and complaint because Wells Fargo knew it "was not valid for [Plaintiff's]

loan."  (*Id.* ¶ 186.)  Third, Plaintiff contends that the belated notarization of the power of attorney

was ineffective because the notary did not apply a seal as required by local regulations.  (*Id.*

¶¶ 181–211.)  Fourth, Plaintiff contends that during the state-court foreclosure proceeding, Wells

Fargo submitted an affidavit of merit signed by Natalie Bryant, then the Vice President of Loan

Documentation, who did not have personal familiarity with the facts and who did not reference

any power of attorney or power granted by the Board of Directors in her affidavit.  (*Id.* ¶¶ 267–

297.)  Fifth, Plaintiff alleges that she did not receive proper notice under sections 1303, 1304 or

1306 of the Real Property Actions and Proceedings Law ("RPAPL").  (*Id.* ¶¶ 318–352).

Plaintiff alleges (1) negligence, (2) common law fraud, fraud pursuant to Rule 9(b) of the

Federal Rules of Civil Procedure, and fraud by omission and misrepresentation, (3) cancellation

---

[10]  Plaintiff also contends that she was never in default with any bank.  (Am. Compl. ¶¶ 285–286.)

[11]  Plaintiff also argues that Wells Fargo's conduct reflects a broader pattern of mortgage foreclosure fraud.  (*Id.* ¶ 451.)

of a voidable contract under sections 23304.1 and 23305A of the Revenue and Tax Code,[12]
(4) wrongful foreclosure, (5) breach of contract, (6) breach of the implied covenant of good faith
and fair dealing, (7) unjust enrichment, (8) violation of section 349 of the New York Consumer
Fraud and Deceptive Business Practice Act, (9) quiet title, and (10) slander of title.  (*Id.* at 2.)
Plaintiff also alleges that Wells Fargo lacked standing to foreclose on the Property.  (*Id.* ¶¶ 307–
316.)

Plaintiff asks the Court to (1) set aside, void, or cancel the trustee's sale and the deed of
trust, (2) award her a declaratory judgment against Wells Fargo that voids and extinguishes any
interest that Wells Fargo holds or claims to hold, and enjoin Wells Fargo from claiming any
interest in the Property in the future, (3) expunge the foreclosure from the public record,
(4) order the removal of any derogatory information reported to any credit agency or reporting
bureau, (5) order the return of "any money given to Wells Fargo bank to anyone, including
[Plaintiff], in connection with the loan transaction," (6) award Plaintiff all legal consulting fees
and costs, (7) order disgorgement of all amounts Wells Fargo profited through unjust
enrichment, (8) award compensatory damages in the amount of $250,000, reflecting the decrease
in the value of the Property, and additional punitive damages, including for pain and suffering,
(9) enter a temporary restraining order, a preliminary injunction, and a permanent injunction
directing the Queens County Sheriff's Department to refrain from conducting any eviction on the
Property, (10) hold that Defendants' actions constitute slander of Plaintiff's title to the property,
and (11) award other compensatory, statutory, and exemplary damages and "such other and
further relief as equity may require."  (*Id.* ¶¶ 507–509, 561, 574; *id.* at 128.)

---

[12]   These statute numbers appear to correspond to the California Revenue and Tax Code.
*See* Cal. Rev. & Tax. Code §§ 23304.1, 23305a.  Plaintiff does not state which facts support this
cause of action.

### iii.   Plaintiff's sanctions allegations

Plaintiff seeks sanctions against the law firm Frenkel Lambert, which represented Wells Fargo in the Foreclosure Action.  (*Id.* ¶ 492.)  Plaintiff alleges that the firm violated applicable state disciplinary rules by bringing a frivolous action on behalf of Wells Fargo while knowing that its client lacked standing to sue.  (*Id.* ¶¶ 480–505.)

## II.   Discussion

### a.   Standards of review

### i.   Rule 12(b)(1)

A district court may dismiss an action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the court "lacks the statutory or constitutional power to adjudicate it."  *Huntress v. United States*, 810 F. App'x 74, 75 (2d Cir. 2020) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)); *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L.*, 790 F.3d 411, 416–17 (2d Cir. 2015) (quoting *Makarova*, 201 F.3d at 113); *Shabaj v. Holder*, 718 F.3d 48, 50 (2d Cir. 2013) (per curiam) (quoting *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005)). "'[C]ourt[s] must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of [the] plaintiff,' but 'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'"  *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted) (first quoting *Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006); and then quoting *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003)), *aff'd*, 561 U.S. 247 (2010).  Ultimately, "the party asserting subject matter jurisdiction 'has the burden of proving by a preponderance of the evidence that it exists.'"  *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239,

243 (2d Cir. 2014) (quoting *Makarova*, 201 F.3d at 113); *see also Suarez v. Mosaic Sales Sols.*

*US Operating Co.*, 720 F. App'x 52, 53 (2d Cir. 2018) (citing *Morrison*, 547 F.3d at 170);

*Clayton v. United States*, No. 18-CV-5867, 2020 WL 1545542, at *3 (E.D.N.Y. Mar. 31, 2020)

(quoting *Tandon*, 752 F.3d at 243); *Fed. Deposit Ins. Corp. v. Bank of N.Y. Mellon*, 369 F. Supp.

3d 547, 552 (S.D.N.Y. 2019) (quoting *Tandon*, 752 F.3d at 243).

### ii.   Rule 12(b)(6)

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil

Procedure, a court must construe the complaint liberally, "accepting all factual allegations in the

complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Kim v. Kimm*,

884 F.3d 98, 103 (2d Cir. 2018) (quoting *Chambers v. Time Warner Inc.*, 282 F.3d 147, 152 (2d

Cir. 2002)); *see also Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (quoting *Jaghory v.*

*N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997)).  A complaint must plead "enough

facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009)).  Although all allegations contained in the complaint are assumed to be true, this

tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

### b.   The *Rooker-Feldman* Doctrine bars Plaintiff's challenge to the judgment of foreclosure and sale

Wells Fargo argues that Plaintiff admits she is bringing a collateral attack on the state-

court proceeding, therefore the *Rooker-Feldman* doctrine applies and bars her lawsuit.  (Wells

Fargo Mem. 4, 6–7.)  In support, Wells Fargo argues that Plaintiff (1) lost in the foreclosure

action, (2) complains of injuries resulting from the judgment in that action, (3) challenges a

judgment issued in 2017, before this case was filed, and (4) brings claims that would require the Court to review the state court's decision in the foreclosure action. (*Id.* at 7.)

Frenkel Lambert argues that the Court should dismiss this action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure because the action is barred by the *Rooker-Feldman* Doctrine which precludes review of the state-court foreclosure judgment. (Frenkel Lambert Mem. 16–17.) In support, Frenkel Lambert argues that this action satisfies all four requirements of the *Rooker-Feldman* doctrine because: (1) Plaintiff lost in the state-court foreclosure action, where a judgment of foreclosure and sale was entered against her, (2) Plaintiff's injuries arise from the state-court action, (3) the state-court judgment was issued before Plaintiff commenced this action, and (4) Plaintiff is asking the court to re-adjudicate the state court's decision — specifically, whether she defaulted and whether Wells Fargo was the proper plaintiff in the state-court foreclosure action. (*Id.* at 17.)

Plaintiff has not opposed the motion.

In *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–16 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486–87 (1983), the Supreme Court held that federal district courts lack subject matter jurisdiction over disputes where a plaintiff essentially seeks review of a state-court decision. *Feldman*, 460 U.S. at 482 ("[A] United States [d]istrict [c]ourt has no authority to review final judgments of a state court in judicial proceedings."); *Rooker*, 263 U.S. at 416 (holding that "no court of the United States other than [the Supreme Court] could entertain a proceeding to reverse or modify [a state court's] judgment for errors"); *see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283–84 (2005) (holding that *Rooker-Feldman* bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting

district court review and rejection of those judgments"); *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014) (per curiam) ("Under the *Rooker-Feldman* doctrine, federal district courts lack jurisdiction over cases that essentially amount to appeals of state court judgments." (citing *Exxon Mobil Corp.*, 544 U.S. at 283–84)). "Underlying the *Rooker-Feldman* doctrine is the principle, expressed by Congress in 28 U.S.C. § 1257, that within the federal judicial system, only the Supreme Court may review state-court decisions." *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005); *see also Vossbrinck*, 773 F.3d at 426 ("The doctrine is rooted in the principle that 'appellate jurisdiction to reverse or modify a state-court judgment is lodged . . . exclusively in [the Supreme] Court.'" (alteration in original) (quoting *Exxon-Mobil Corp.*, 544 U.S. at 283)).

In order for the *Rooker-Feldman* doctrine to apply, the following four-part test must be satisfied: "(1) the federal-court plaintiff lost in state court; (2) the plaintiff 'complain[s] of injuries caused by a state[-]court judgment'; (3) the plaintiff 'invite[s] . . . review and rejection of that judgment'; and (4) the state judgment was 'rendered before the district court proceedings commenced.'" *Vossbrinck*, 773 F.3d at 426 (first and third alterations in original) (quoting *Hoblock*, 422 F.3d at 85); *see also McKithen v. Brown*, 626 F.3d 143, 154 (2d Cir. 2010) (outlining the *Rooker-Feldman* test).

### i.   Claims challenging the judgment of foreclosure and sale

Plaintiff's requests for declaratory and injunctive relief as to title in the Property are barred by the *Rooker-Feldman* doctrine because (1) Plaintiff challenges a state court judgment of foreclosure and sale entered on October 17, 2017; (2) the alleged injuries stem from that judgment; (3) Plaintiff seeks review and rejection of the state court's judgment; and (4) Plaintiff filed the Complaint in this action on July 26, 2019, approximately a year and nine months after

13

the State Court issued the judgment of foreclosure and sale. *See Vossbrinck*, 773 F.3d at 426–27 (holding that the *Rooker-Feldman* doctrine barred review of a state foreclosure action and judgment because by "asking the federal court to determine whether the state judgment was wrongfully issued in favor of parties who, contrary to their representations to the court, lacked standing to foreclose," the plaintiff was asking "the federal court to review the state proceedings and determine that the foreclosure judgment was issued in error"); *Murphy v. Riso*, No. 11-CV-873, 2012 WL 94551, at *6 (E.D.N.Y. Jan. 12, 2012) (noting that "numerous courts in this Circuit . . . have consistently held that attacks on a judgment of foreclosure are barred by the *Rooker-Feldman* doctrine" and listing cases); *see also Swiatkowski v. New York*, 160 F. App'x 30, 32 (2d Cir. 2005) (affirming dismissal on *Rooker-Feldman* grounds where plaintiffs alleged "various civil and constitutional rights violations" but their claims "essentially amount[ed] to an objection to the disposition of the foreclosure action" by the state court). Because Plaintiff's claims challenging the judgment of foreclosure based on allegations of fraud, of lack of personal jurisdiction, of defective title, of lack of a proper power of attorney, and that the affidavit of merit[13] was filed without knowledge of the facts by the affiant all seek to set aside the judgment of foreclosure and sale, the claims are barred by the *Rooker-Feldman* doctrine. *See Vossbrinck*, 773 F.3d at 427 ("To the extent [the plaintiff] asks the federal court to grant him title to his property because the foreclosure judgment was obtained fraudulently, *Rooker-Feldman* bars [his] claim.").

---

[13] An affidavit of merit is a requirement of New York law. *See HSBC Bank USA, N.A. v. Betts*, 888 N.Y.S.2d 203, 204 (App. Div. 2009) ("Where, as here, a foreclosure complaint is not verified, CPLR 3215(f) states, among other things, that upon any application for a judgment by default, proof of the facts constituting the claim, the default, and the amount due are to be set forth in an affidavit 'made by the party.'"). Wells Fargo submitted an affidavit of merit in the Foreclosure Action. (Aff. of Natalie Bryant, annexed to Am. Compl. as Ex. L, Docket Entry No. 17-8.)

### ii. Damages claims

Plaintiff also seeks money damages.  (Am. Compl. ¶¶ 561, 574; *id.* at 128.)  "[T]o the extent [the plaintiff's] *pro se* complaint can be liberally construed as asserting fraud claims . . . seek[ing] damages . . . for injuries [the plaintiff] suffered from [the defendant's] alleged fraud, the adjudication of which does not require the federal court to sit in review of the state court judgment," such claims "are not barred by *Rooker-Feldman*."  *See Vossbrinck*, 773 F.3d at 427; *Worthy-Pugh v. Deutsche Bank Nat'l Tr. Co.*, 664 F. App'x 20, 21 (2d Cir. 2016) ("The *Rooker-Feldman* doctrine does not prevent a district court from reviewing a claim for damages stemming from an allegedly fraudulent foreclosure judgment, because the district court can determine damages liability without reviewing the propriety of the state court judgment."); *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 94–95 (2d Cir. 2015) (noting that "claims . . . speak[ing] not to the propriety of the state court judgments, but to the fraudulent course of conduct that defendants pursued in obtaining such judgments" are not barred by *Rooker-Feldman*). Accordingly, the Court addresses those claims below.

### c. Plaintiff's claims are barred by res judicata

Wells Fargo argues that res judicata bars Plaintiff's suit because there is a final adjudication on the merits (the judgment of foreclosure and sale), Plaintiff and Wells Fargo were parties to the previous action, and Plaintiff's claims could have been raised in the foreclosure action.  (Wells Fargo Mem. 4–6.)

Frenkel Lambert argues that Plaintiff's claims are barred by the doctrine of res judicata because Plaintiff could have brought the fraud and wrongful foreclosure claims she seeks to litigate before this Court in the foreclosure action.  (Frenkel Lambert Mem. 18–19.)  In support, Frenkel Lambert contends that all of Plaintiff's claims challenge Wells Fargo's commencement

of the foreclosure proceedings and events that occurred during those proceedings.[14]  (*Id.*)

Although Plaintiff has not opposed the motion to dismiss, in her Amended Complaint she alleges that res judicata does not apply because she was not served.  (Am. Compl. ¶ 36.)

"The doctrine of res judicata, or claim preclusion, holds that 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'"  *Brown Media Corp. v. K&L Gates, LLP*, 854 F.3d 150, 157 (2d Cir. 2017) (quoting *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000)); *Proctor v. LeClaire*, 715 F.3d 401, 411 (2d Cir. 2013).  Under New York law, claim preclusion bars a claim where "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the same adverse parties or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been raised, in the prior action."  *Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc.*, 779 F.3d 102, 108 (2d Cir. 2015) (alterations and citation omitted).

Plaintiff's claims are barred by res judicata.  First, the Foreclosure Action resulted in an adjudication on the merits.  The State Court, in entering a judgment of foreclosure and sale, found that the Property should be sold and the proceeds used to repay the money that Plaintiff owed Defendant.  (J. of Foreclosure and Sale); *see Borrani v. Nationstar Mortg. LLC*, 820 F. App'x 20, 23 (2d Cir. 2020) (holding that a grant of summary judgment in a state-court

---

[14]  Frenkel Lambert also argues that Plaintiff's claims are barred by the doctrine of collateral estoppel because she had a "full and fair opportunity" to contest the issues raised in the Amended Complaint during the state-court action.  (Frenkel Lambert Mem. 19.)  Wells Fargo and Frenkel Lambert also argue that the Court should dismiss the Amended Complaint pursuant to Rule 12(b)(6) because Plaintiff has failed to state a claim.  (Wells Fargo Mem. 10–19; Frenkel Lambert Mem. 19–24.)  Because the Court dismisses the Amended Complaint on other grounds, it does not address these arguments.

16

foreclosure action was a final judgment on the merits); *Harris v. BNC Mortg., Inc.*, 737 F. App'x

573, 575 (2d Cir. 2018) ("The foreclosure default judgment is a final judgment on the merits.").

Wells Fargo was a party to the Foreclosure Action, (Summons, State Ct. Compl., Notice

of Pendency, and Aff. of Service), and Frenkel Lambert, Wells Fargo's attorney in that

proceeding, shared the interests of and was therefore in privity with Wells Fargo, satisfying the

second element of the test. *See Ray Legal Consulting Grp. v. Gray*, 37 F. Supp. 3d 689, 701–02

(S.D.N.Y. 2014) (holding that, for res judicata purposes, an attorney was in privity with his client

because they shared the same interests); *see also Weinberger v. Tucker*, 510 F.3d 486, 492–93

(4th Cir. 2007) (collecting cases and noting that "[c]ourts have held that the attorney-client

relationship itself establishes privity").

Plaintiff brought her claim that she was not properly served in the Foreclosure Action,

(*see* Mot. to Dismiss and Aff. in Opp'n), and the State Court addressed Plaintiff's argument and

concluded that her attendance at four settlement conferences confirmed that she had adequate

notice in the case, (Order dated May 16, 2017).  Res judicata precludes relitigation of the state

court's determination that Plaintiff had proper notice of the foreclosure proceeding.  *Bittner v.*

*Huttger*, 550 F. Supp. 9, 10 (S.D.N.Y. 1981) (holding that res judicata barred the plaintiff's

argument that a state court judgment was "obtained by fraud . . . based on alleged defects in

service of process" because the state court had rejected those same arguments), *aff'd*, 697 F.2d

288 (2d Cir. 1982); *see also Ins. Corp. of Ir. v. Compagnie Des Bauxites De Guinee*, 456 U.S.

694, 702 n.9 (1982) ("It has long been the rule that principles of res judicata apply to

jurisdictional determinations — both subject matter and personal.").  Therefore, because the

State Court held that Plaintiff received proper notice of the Foreclosure Action, that

determination is itself subject to res judicata.  *See Dekom v. Fannie Mae*, --- F. App'x ---, ---,

2021 WL 509662, at *2–3 (2d Cir. Feb. 11, 2021) (holding that the plaintiff's fraud and wrongful foreclosure claims concerning the foreclosure of his New York property were barred by res judicata because he could have raised the legal theories he raised in federal court); *Hansen v. Miller*, No. 19-CV-4519, 2020 WL 5802289, at *16 (E.D.N.Y. Sept. 29, 2020) (holding that fraud claims that were or could have been raised in a state-court foreclosure action were barred by res judicata and noting that "the Second Circuit has barred fraud claims raised in a subsequent action on the basis of *res judicata* to the extent they are not barred by *Rooker-Feldman*" (citing *Worthy-Pugh*, 664 F. App'x at 22)).

In addition, Plaintiff's claims that (1) the transfer of assets from the FDIC receiver to Wells Fargo was defective because Washington Mutual Bank's assets had already been transferred to Chase before the FDIC receiver allegedly transferred the note to Wells Fargo, (2) Wells Fargo was not the proper party in interest because title to the Property was not recorded in Wells Fargo's name before the Foreclosure Action was commenced and Wells Fargo did not attach its limited invalid power of attorney to the summons and complaint because Wells Fargo knew it was invalid,[15] (3) the power of attorney was not correctly notarized, (4) the affidavit submitted by Natalie Bryant in the Foreclosure Action was insufficient because, among other reasons, Bryant did not have personal familiarity with the facts, and (5) she did not receive proper notice under the RPAPL, could have been brought in the Foreclosure Action because the facts underlying these claims were apparent to Plaintiff during the pendency of the Foreclosure

---

[15]  The Amended Complaint suggests that the limited power of attorney was never filed in the Foreclosure Action, (Am. Compl. ¶¶ 183, 185), and, inconsistently, that the Foreclosure Action was "started with" the document, (*id.* ¶ 182).  To the extent the State Court relied on that document in the Foreclosure Action, Plaintiff could have challenged it.  Nothing in the Amended Complaint suggests that Plaintiff is bringing a separate fraud claim based on a limited power of attorney that is unrelated to the Foreclosure Action.

Action, and she does not allege otherwise.  Plaintiff's claims are therefore barred by res judicata.

*See Savvidis v. McQuaid*, No. 19-CV-1308, 2020 WL 249027, at *6 (D. Conn. Jan. 16, 2020)

("To the extent [the plaintiff] challenges the validity of the [m]ortgage, or any of its subsequent

assignments, she could have raised such arguments in the state foreclosure action . . . to the

extent the claims are not barred by *Rooker-Feldman*, they must nevertheless be dismissed as

precluded."); *Fequiere v. Tribeca Lending*, No. 14-CV-812, 2016 WL 1057000, at *7 (E.D.N.Y.

Mar. 11, 2016) (finding that the plaintiff's claims alleging "that [the] defendants improperly

obtained [a] [f]oreclosure [j]udgment" were or could have been brought in a state court

foreclosure action); *Solomon v. Ocwen Loan Servicing, LLC*, No. 12-CV-2856, 2013 WL

1715878, at *5 (E.D.N.Y. Apr. 12, 2013) ("The state-law claims asserted by plaintiff arise from

the origination of the [m]ortgage and attack the ability of defendants to enforce it in the

foreclosure proceedings.  These claims could have been raised as a defense to foreclosure in state

court, and therefore cannot be relitigated in a subsequent suit in federal court.").

### d.   The Court denies Plaintiff's sanctions motion

Plaintiff asks the Court to impose sanctions on Frenkel Lambert for actions taken by the

firm's attorneys during the foreclosure proceeding in state court.  (Am. Compl. ¶¶ 480–505.)

Frenkel Lambert argues that the claim fails as a matter of law because Plaintiff has failed

to allege particularized facts showing the violation of any rule.  (Frenkel Lambert Mem. 23–24.)

Section 1927 of Title 28 of the United States Code provides that "[a]ny attorney . . . who

so multiplies the proceedings in any case unreasonably and vexatiously may be required by the

court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred

because of such conduct."  28 U.S.C. § 1927.  The statute "authorizes sanctions 'when the

attorney's actions are so completely without merit as to require the conclusion that they must

have been undertaken for some improper purpose,' and upon 'a finding of conduct constituting or akin to bad faith.'" *Gollomp v. Spitzer*, 568 F.3d 355, 368 (2d Cir. 2009) (quoting *In re 60 E. 80th St. Equities, Inc.*, 218 F.3d 109, 115 (2d Cir. 2000)); *see also Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 178 (2d Cir. 2012) ("[W]hile the standard for triggering sanctions under Rule 11 is 'objective unreasonableness,' to impose sanctions under [section] 1927, the court must make a finding of 'conduct constituting or akin to bad faith.'" (first quoting *Margo v. Weiss*, 213 F.3d 55, 65 (2d Cir. 2000); and then quoting *In re 60 E. 80th St. Equities, Inc.*, 218 F.3d at 115))). In addition to this statutory power, a court has the inherent power to "discipline attorneys who appear before it," and "impose monetary sanctions against a litigant (or its counsel) for misconduct." *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 991 F.3d 361, 367 (2d Cir. 2021) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)).

"The language of [section] 1927 limits the court's sanction power to attorney's actions which multiply the proceedings in the case before the court. Section 1927 does not reach conduct that cannot be construed as part of the proceedings before the court issuing [section] 1927 sanctions." *In re Case*, 937 F.2d 1014, 1023 (5th Cir. 1991); *see also In re Galgano*, 358 B.R. 90, 104 (Bankr. S.D.N.Y. 2007) ("[T]he Court has no authority to exercise either its inherent power or the power under Section 1927 to sanction a party for conduct that occurred before another court."). Plaintiff's request for sanctions concerns her allegations that Frankel Lambert engaged in needless litigation burdening the State Court in the Foreclosure Action because Wells Fargo had no standing to sue and Frenkel Lambert knew that. (Am. Compl.

¶¶ 491–505.)  Because the conduct did not occur before this Court, the Court denies Plaintiff's

motion for sanctions.[16]

        **e.**    **Leave to amend**

In light of Plaintiff's failure to respond and oppose the motions to dismiss, the Court

grants Plaintiff leave to file a second amended complaint asserting any claims for damages not

barred by the *Rooker-Feldman* Doctrine or otherwise precluded by the Foreclosure Action.

**III.   Conclusion**

For the foregoing reasons, the Court grants Defendants' motions to dismiss and dismisses

the Amended Complaint.  The Court grants Plaintiff thirty days from the date of this

Memorandum and Order to file a second amended complaint.  The second amended complaint

must be captioned "Second Amended Complaint" and bear the same docket number as this

Memorandum and Order.  If Plaintiff fails to file a second amended complaint within thirty days,

the Court shall dismiss the action.  The Clerk of Court is directed to mail a copy of this

Memorandum and Order to Plaintiff.

Dated: May 6, 2021
      Brooklyn, New York

                           SO ORDERED:


                              s/ MKB
                         MARGO K. BRODIE
                         United States District Judge

---

[16]  A party may also move for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure by providing "notice and a reasonable opportunity to respond," and must make the "motion for sanctions . . . separately from any other motion and . . . describe the specific conduct that allegedly violates Rule 11(b)."  Fed. R. Civ. P. 11(c).  Plaintiff has not complied with the Rule 11 requirements.